UNITED STATES *v.* AMERICAN SHIPPING CO. (No. 2582) [1]

1. CONSTRUCTION, MANUFACTURES TAKE HIGHER RATE THAN MATERIALS.

Unless the contrary clearly appears, Congress will be presumed to intend that finished products shall bear a higher rate of duty than their materials. To classify "pinelyptus," a combination of the essential oils of pine and eucalyptus, used in making medicinal pastilles, with the essential oils of paragraph 61, Tariff Act of 1922, would violate this rule.

2. CONSTRUCTION—PARAGRAPH HEADINGS AS AID.

The heading of paragraph 61, Tariff Act of 1922, "Perfume Materials," nothing to the contrary appearing, is strongly indicative of a legislative intent. to limit the paragraph to such.

3. "PINELYPTUS."

A combination of the essential oils of pine and eucalyptus, known as "pinelyptus," used in the manufacture of medicinal pastilles, is not classifiable under the provision of paragraph 61, Tariff Act of 1922, for "all mixtures or combinations containing essential or distilled oils," that paragraph being restricted to perfume materials; and the judgment of the Board of United States General Appraisers classifying it as a not specially provided for manufacture, under paragraph 1459, is affirmed.

1 T. D. 41254.

United States Court of Customs Appeals, December 4, 1925

APPEAL from Board of United States General Appraisers, Abstract 48702

[Affirmed.]

*William W. Hoppin,* Assistant Attorney General, for the United States.
*Allan R. Brown* for appellee.

[Oral argument Oct. 8, 1925, by Mr. Hoppin and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The importation the subject of this appeal is called pinelyptus, and is a combination of essential oils, to wit, pine oil and eucalyptus oil, and was returned for duty at 40 cents per pound and 50 per centum ad valorem under paragraph 61 of the Tariff Act of 1922, which reads as follows:

PAR. 61. Perfume materials: Ambergris, castoreum, civet, and musk grained or in pods, 20 per centum ad valorem; anethol, citral, geraniol, heliotropin, ionone, rhodinol, safrol, terpineol, vanillin, and all natural or synthetic odoriferous or aromatic chemicals, all the foregoing not mixed and not compounded, and not specially provided for, 45 per centum ad valorem; *all mixtures or combinations containing essential or distilled oils,* or natural or synthetic oderiferous or aromatic substances, *40 cents per pound and 50 per centum ad valorem: Provided,* That only materials not marketable as perfumery, cosmetics, or toilet preparations, and not containing more than 10 per centum of alcohol, shall be classified for duty under this paragraph: *Provided further,* That all of the foregoing materials containing more than 10 per centum of alcohol shall be classified for duty under paragraph 62 as toilet preparations.   (Italics ours.)

It was held by the Board of General Appraisers to be dutiable at 20 per centum ad valorem under paragraph 1459, as claimed in the protest.

Paragraph 1459 reads as follows:

PAR. 1459. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

The board first decided the case as a noncontested case and classified the merchandise under paragraph 61, but afterwards, upon further reflection, held it to be dutiable as a manufactured article, n. s. p. f., for the reason that paragraph 61 was intended to include only chemicals and substances used in the manufacture of perfumery.

As the court below has pointed out in its opinion, the following admissions were made by the attorneys representing the Government and the importer:

Mr. KLINGAMAN. I will ask Mr. Lawrence to agree that the commodity in question is a combination of essential oils and that it is not used in the manufacture of perfumery.

Mr. LAWRENCE. After consulting with Doctor Gillies (the examiner) I assent to that.

Mr. KLINGAMAN. Will you consent to the fact that it is used in the manufacture of pastiles?

Mr. LAWRENCE. Medicinal pastiles, do you mean?

Mr. KLINGAMAN. Yes.

Mr. LAWRENCE. Yes.

It will be noticed, first, that paragraph 61 is headed "Perfume materials" followed by a colon and immediately followed by different named ingredients admittedly used for making perfumery; second, by the following provision: "and all natural or synthetic odoriferous or aromatic chemicals"; third, "all mixtures or combinations containing essential or distilled oils"; fourth, "all natural or synthetic odoriferous or aromatic substances"; and, fifth, the proviso provides "That only materials not marketable as perfumery, cosmetics, or toilet preparations and not containing more than 10 per centum of alcohol shall be classifiable for duty under the paragraph."

It is argued by the importer that the words "Perfume materials," at the head of the paragraph, limits the classification within the paragraph to merchandise only which is material used in the manufacture of perfumery. With this contention the board agreed. No authorities are cited on this phase of the case, either in the board's opinion or in the briefs of the parties.

It seems to be conceded by the Government that the merchandise is not a *natural* or *synthetic* odoriferous or aromatic *chemical*, and that it is not a *natural* or *synthetic* odoriferous or aromatic substance. The sole reliance of the Government is upon its claim that the merchandise falls within the provision "all mixtures or combinations containing essential or distilled oils." It is conceded by all parties that, if the paragraph were not confined to perfume materials, the merchandise would fall clearly within this part of paragraph 61.

Paragraph 61 is a combination of two or more paragraphs in the tariff act of 1913, but we see nothing in the history of the legislation, or in the circumstances surrounding its enactment, which would indicate that Congress meant to include within the paragraph mixtures or combinations containing essential or distilled oils which were not used in the manufacture of perfumery.

We think Congress meant to include all mixtures or combinations containing essential or distilled oils used in the making of perfumery and to exclude those which were not so used.

That this paragraph should have this interpretation is abundantly supported by the decisions of this and other courts, among them being *Crimmins & Pierce* v. *United States*, 6 Ct. Cust. Appls. 137, in which

the following paragraph of the tariff act of 1913 was under consideration:

PAR. 651. Wool wastes: All noils, top waste, card waste, slubbing waste, roving waste, ring waste, yarn waste, bur waste, thread waste, garnetted waste, shoddies, mungo, flocks, wool extract, carbonized wool, carbonized noils, and all other wastes not specially provided for in this section.  *  *  *

The importation consisted of short pieces of mohair waste from slivers which were picked and carded again for further use, and also mohair noils.  They were assessed for duty as waste not specially provided for at 10 per centum ad valorem under paragraph 384. This court held that they were not dutiable under paragraph 651, supra, and used this language:

An initial question arises as to whether or not wool noils are a waste. It would seem that the statute (par. 651) concludes this question.  It opens with the words "*wool wastes*," predicated of which the wool wastes are enumerated, the first included being that of "all noils" and the last "all other wastes not specially provided for in this section."  It seems to us that the enumerations are all predicated of the words "*wool waste*," and that all the enumerations within the paragraph in order to be included therewithin must be deemed first, wool, and, second, wastes.

Further in the opinion, in this case, the court, through Judge De Vries, said:

While the rule is, of course, that the title of an act or of a paragraph does not control the legislation embraced therewithin, it is in cases of doubt an accepted source of information and can always be looked to as one of the guides to the legislative purpose.  This rule obtains as to the schedule titles in tariff laws. The doctrine is appropriately stated in *Hollender* v. *Magone*, 149 U. S. 586, 591, wherein the Supreme Court said:

The multitude of articles upon which duty was imposed by the tariff act of 1883 are grouped in that act under fourteen schedules, each with a different title, and all that was intended by those titles *was a general suggestion as to the character of the articles within the particular schedule*, and not any technically accurate definition of them.  See also *Wilson et al.* v. *Spaulding*, 19 Fed. 304.

We think this case, and the cases cited, state the rule applicable to the facts at bar.  While the words "Perfume materials" under certain circumstances might not be controlling as to the classification of articles within the paragraph, there is no circumstance leading to the conclusion that Congress did not intend them to be controlling.  In the absence of anything showing the contrary, it is certainly strongly indicative of the legislative intent.

It is argued by counsel for the Government that both provisos indicate that articles other than perfume materials had preceded it. We do not see anything in either proviso that suggests that the framers of the act regarded any of the substances named as anything but perfume materials.  The first proviso clearly means that, if any of the materials named were marketable as perfumery, cosmetics,

or toilet preparations, and did not contain more than 10 per centum of alcohol, they should not be included within the paragraph. It is obvious that Congress intended that if the materials were sold in this country as perfumery they should bear a duty of 40 cents per pound and *75 per centum ad valorem* under paragraph 62, as perfumery, and in the second proviso, if any of the materials, regardless of whether or not they were sold as perfumery, cosmetics, or toilet preparations, contained more than 10 per centum of alcohol, that they should also be classifiable under paragraph 62, as toilet preparations. We can not see how a consideration of the provisos strengthens the Government's position. The fact that perfumery is again mentioned in the proviso would lend some strength to the contention of the importer.

The merchandise is conceded to be used in the manufacture of medicinal preparations, to wit, medicinal pastilles, and it is agreed that they are not used as perfume materials. To require the classification of this merchandise, which is material for the manufacture of medicinal preparations, under paragraph 61, at a duty of 40 cents per pound and 50 per centum ad valorem, would bring about the anomalous position of assessing for duty a manufacturing material at a higher rate than the finished product, which is dutiable at only 25 per centum ad valorem. This result is not in harmony with the presumed intent of Congress, and has been so frequently referred to in the decisions of courts as not to require extended citation. True enough, Congress has the right to provide for a higher duty on materials for manufacture than it has provided for the finished product, but unless it is clear that it intended to do so this court will not require such classification, if by reasonable and proper interpretation it may be avoided. *United States* v. *Wells, Fargo & Co.*, 1 Ct. Cust. Appls. 158.

Claims for classification other than in paragraph 1459 were made by the importer. We think these claims are without merit, and that the importation is a nonenumerated manufactured article and falls within paragraph 1459.

The judgment of the Board of General Appraisers is *affirmed.*